IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DEANDRE' SMITH,

 Plaintiff,

v.                   Civil Action No. 2:12cv44
                      (JudgeBailey)
HARLEY G. LAPPIN; TERRY
O'BRIEN, Warden, U.S.P. Hazelton;
JOHN STEPHENS, Commissary
Officer; and CHARLES E. SAMUELS, JR.,
Director of Federal Bureau of Prisons,

 Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this Bivens[1] civil rights action on June 25, 2012, against the above-named defendants. After being granted an extension to correct certain deficiencies with his pleadings, on August 15, 2012, the plaintiff was granted permission to proceed as a pauper; subsequently, he paid his initial partial filing fee.

On September 11, 2012, the undersigned conducted a preliminary review of the file and entered an Order to Answer, directing the defendants to answer the complaint. On November 2, 2012, the defendants moved for an extension of time and a consolidated response date, which was granted by Order entered November 5, 2012. On December 26, 2012, the defendants moved for leave to file excess pages, and on December 28, 2012, they moved for an enlargement of time. Both motions were granted by Orders entered on January 2, 2013. On January 2, 2013, the defendants[2] filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. A Roseboro Notice was entered on January 8, 2013, advising the plaintiff of his right to file a response to defendants'

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] To date, as noted in the defendants' motion, there is no indication in the docket showing that defendants Harley G. Lappin and Charles E. Samuels, Jr. were ever served.

1

dispositive motion. The plaintiff filed his response on January 24, 2013. On January 25, 2013, the plaintiff moved for an enlargement of time and consolidated response date, both of which were denied as moot in an Order entered January 29, 2013.

Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

## II. The Pleadings

### A. Plaintiff's Complaint (Dkt.# 15)

In his complaint, the plaintiff, an inmate at U.S.P. Hazelton in Bruceton Mills, West Virginia, raises claims of failure to protect and deliberate indifference to serious medical needs against the defendants. Specifically, the plaintiff contends that

1) the defendant Harley Lappin ("Lappin"), the former director of the Bureau of Prisons ("BOP") on February 2, 2011, failed to ensure that the defendant John Stephens, a commissary officer, was properly trained to prevent weapons from being brought into the commissary. Plaintiff was working there that day, and was stabbed four times in the back and once in the left upper arm by an inmate wielding an eight-inch metal shank.

2) Defendant Terry O'Brien ("O'Brien") as warden, failed to protect him by providing surveillance cameras inside the commissary; by requiring inmates undergo "pat downs" to enter the commissary; and by failing to install metal detectors at the commissary entrance.

3) Plaintiff alleges that after an initial two-day hospitalization for his injuries, he was denied further follow up care for his injuries, because defendant O'Brien did not ensure that he be taken back to the hospital for scheduled follow up visits.

4) Plaintiff contends that if defendant John Stephens, an eyewitness to the attack, had actually intervened on his behalf, instead of merely watching the assault, his injuries would not have been so serious.

5) Defendant Charles Samuels ("Samuels"), the current director of the Bureau of Prisons, was deliberately indifferent to his serious medical needs because plaintiff did not receive certain prescribed medication, and a change in the sick call system denied him access to timely and appropriate health services.

6) Finally, plaintiff contends that a notary and secretary at U.S.P. Hazelton by the name of Mr. M. Gyurke denied his constitutional rights by preventing him from securing an affidavit to use in presenting his case.

2

Plaintiff alleges that as a result of the attack, he suffered a fractured scapula, and now has nerve damage in his legs and feet and constant pain in his lower back.

As relief, plaintiff seeks $200,000.00 in "monetary compensation," and the opportunity to "continue to do my time without retribution for filing this suit." (Dkt.# 15 at 13).

**B. Defendants' Motion to Dismiss or for Summary Judgment (Dkt.# 34)**

In its motion to dismiss or for summary judgment, the defendants assert that the case should be dismissed because the plaintiff failed to exhaust his administrative remedies and his claims fail to state a claim upon which relief can be granted.

**C. Plaintiff's Response to Defendants' Motion to Dismiss or for Summary Judgment (Dkt.# 42)**

Plaintiff reiterates his claims and attempts to refute the defendants' arguments against the same.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a

3

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the

evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

5

Moreover, liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

**A. Failure to Exhaust**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate

---

[1] Id.

unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton or FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, the plaintiff initiated the Bureau's administrative remedy process five times since the February 2, 2011 incident.[3] The defendants argue, however, that only one grievance, Grievance #658765-F1, raised any of the issues plaintiff is raising in his complaint.[4] In that fully exhausted grievance, the plaintiff did allege he was assaulted, but he merely generally alleged that searches were not conducted nor metal detectors used, prior to inmates' entry into the commissary; he did not

---

[3] Dkt.# 34-4 at 2, ¶ 7; Id. at 9.

[4] Id.

allege that any particular staff member was at fault.[5] Although that remedy form explains how the plaintiff was injured, *i.e.*, that he was assaulted by another inmate while working at the commissary, it seeks redress only for the alleged general failure to protect. Id. Additionally, because the relief sought in those remedies was "[f]inances, lower custody level, F.C.I. Transfer,"[6] the BOP responded only as to that claim, and was not on notice that the plaintiff was seeking redress against any particular individual for the alleged failure to protect. Id. Thus, it is clear from the complaint and the parties' exhibits that he did not *fully* and *properly* exhaust his claim that the defendants failed to protect him. For that reason, the defendants' motion to dismiss should be granted as to Claims One, Two and Four.

As for Claims Three and Five, defendants O'Brien and Samuels' alleged deliberate indifference to plaintiff's serious medical needs, a review of the documents attached to the defendants' motion to dismiss reveal that plaintiff never even initiated the administrative grievance process regarding these claims. Thus, his claims that defendants O'Brien and Samuels failed to ensure that he got transported to follow-up visits; failed to give him prescribed medicine; and changed the sick call system at Hazelton to limit his access to medical care, must also be dismissed for failure to exhaust.

Finally, plaintiff's Claim Six claim of "Mr. M. Gyurke's" deliberate indifference, for allegedly violating his constitutional rights by failing to provide him with an affidavit, not only did the plaintiff fail to name Gyurke as a defendant in this action, this claim was likewise never submitted to the prison's administrative grievance process. Thus, it must be dismissed for failure to exhaust as well.

B. **Failure to Protect**

---

[5] Id. at 2-3.

[6] Id. at 10.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id., n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

Because the plaintiff did fully exhaust a *general* claim of failure to protect, although not specifically against defendants Lappin, O'Brien and Stephens, in the interests of justice, plaintiff's claim will be given further review here.

Plaintiff alleges that on February 2, 2011, while working in the commissary, he was reaching up to a shelf in one of the aisles, when, apparently without provocation, another inmate suddenly began stabbing him from behind. (Dkt.# 42 at 1).

That the plaintiff was assaulted by "Gamez," another inmate, is undisputed. However, it is apparent from the record of the disciplinary hearing over the issue, that the attack did not happen as plaintiff alleges in his complaint, but rather, resulted from a "wrestling" match that went bad. A review of the record reveals that although Gamez was determined to be the aggressor in the actual stabbing, the plaintiff was also found culpable of fighting; he admitted to "wrestling" with Gamez

9

prior to the stabbing; was seen punching Gamez with close fists; and he actually bit off a significant part of Gamez's ear in the scuffle.[7] Moreover, plaintiff has not alleged, nor is there anything in the record to show that any of the named defendants were aware, prior to the assault, that the plaintiff was at risk of assault from Gamez. Plaintiff does not allege that Gamez was on a "keep away" list; that there had ever been prior conflict with him; or that there was any reason for any of the defendants to expect that Gamez would ever attack him. Accordingly, because the record does not conclusively establishes facts sufficient to make any finding regarding whether any of the named defendants were aware of any facts from which an inference could be drawn that the plaintiff was at risk of injury at the hands of the inmate Gamez before the February 2, 2011 assault, the undersigned recommends that these claims be dismissed for failure to state a claim upon which relief can be granted.

### V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt.# 34) be **GRANTED** and petitioner's Bivens complaint (Dkt.# 15) be **DENIED and DISMISSED with prejudice**.[8]

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by February 27, 2013**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1);

---

[7] Dkt.# 42-2 at 1 – 4 and Dkt.# 34-1 at 2.
[8] Dismissal with prejudice is appropriate, because the plaintiff is now procedurally barred from raising these claims in the administrative remedy process. See 28 C.F.R. 542.14(a) (a prisoner has 20 calendar days following the date on which the incident occurred, to file a formal administrative remedy).

Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

Further, the Clerk is directed to terminate the referral of this action to the undersigned.

DATED: February 13, 2013

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE